**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JOSHUA CAIN GEORGE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-986** |
| **WARDEN JEFFERY TRAVIS, ET AL.** | **SECTION: "R"(1)** |

### REPORT AND RECOMMENDATION

Plaintiff, Joshua Cain George, a state prisoner, filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Warden Jeffery Travis, Larry Grow, Jeffery Primes, Tim Crawford, Thomas Mitchell, and Eric Manning. In this lawsuit, plaintiff makes the following allegations regarding his confinement at the Rayburn Correctional Center in Angie, Louisiana.

Plaintiff states that inmates in the extended lockdown tier, such as himself, are not permitted to have any legal documents or materials with them in their cells. If they are found with such documents outside of the time allotted for "legal study," they are punished for possession of contraband and the materials are confiscated.

On August 28, 2006, plaintiff was charged with possession of such contraband, as well as other disciplinary infractions, by defendant Primes. A disciplinary hearing was scheduled on the charges for August 30, 2006; however, defendant Manning did not allow plaintiff to attend that hearing on the grounds that he was not properly dressed. At that hearing, plaintiff, in his absence, was sentenced to forty days in isolation.

In connection with the contraband charge, defendant Primes also confiscated plaintiff's legal materials. Plaintiff has requested return of those materials from defendant Crawford; however, the materials have not been returned.

On October 10, 2006, plaintiff claims that, in retaliation for his filing grievances, a "shakedown" was initiated by Primes. In the connection with that shakedown, a cigarette and lighter, which are considered contraband, were allegedly found in plaintiff's legal materials. On October 11, 2006, plaintiff pled guilty to that disciplinary charge.

On October 12, 2006, defendant Mitchell announced that, on the orders of defendant Grow, all legal materials would be searched. He stated that if any nonlegal materials, such as personal letters or other personal documents, were found in the legal materials, the nonlegal materials would be confiscated and destroyed. Plaintiff's request to send his personal documents home was refused; rather, three of his personal letters were found among the legal materials and destroyed.

Plaintiff has complained to defendant Travis of the "oppressive restrictions" placed on inmates in extended lockdown; however, Travis has refused to investigate and resolve plaintiff's complaints.

This Court is statutorily mandated to "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>     (1) is frivolous, malicious, or fails to state a claim upon which relief
>     may be granted; or

>    (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>    (i) is frivolous or malicious;
>    (ii) fails to state a claim on which relief may be granted; or
>    (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

The Court has broad discretion in determining the frivolous nature of the complaint. Cay v. Estelle, 789 F.2d 318, 325 (5th Cir. 1986), modified on other grounds, Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993). In making that determination, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994). Thus, a complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994); Booker, 2 F.3d at 115 & n.6. Broadly reading plaintiff's complaint,[1] the Court finds that plaintiff's complaint should be dismissed

---

[1] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

3

as frivolous, for otherwise failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

## Official-Capacity Claims

In addition to the claims asserted against them in their individual capacities, the defendants have also been sued in their official capacities. However, all of the defendants are state officials or employees who work at the Rayburn Correctional Center, a state prison. A suit against a state official or employee in his official capacity is actually a suit against the state itself. Hafer v. Melo, 502 U.S. 21, 25 (1991). The Eleventh Amendment bars a state's citizens from filing suit against the state in federal court unless the state has waived its immunity. Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 280 (5th Cir. 2002). The United States Fifth Circuit Court of Appeals has noted:

> By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court. See La.Rev.Stat.Ann. § 13:5106(A).
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power. We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.

Id. at 281 (quotation marks and citations omitted). Because the Eleventh Amendment deprives this Court of jurisdiction over the official-capacity claims, those claims should be dismissed without prejudice. See Warnock v. Pecos County, Texas, 88 F.3d 341, 343 (5th Cir. 1996).

As to plaintiff's claims against the defendants in their *individual* capacities, those claims should be dismissed with prejudice as frivolous and for otherwise failing to state a claim on which relief may be granted for the following reasons.

Limitations on Legal Materials

Plaintiff challenges the prison's prohibition against inmates on the extended lockdown tier having any legal documents or materials with them in their cells. If they are found with such documents outside of the time allotted for "legal study," they are punished for possession of contraband and the materials are confiscated.

Plaintiff attached to his complaint documents verifying and detailing this policy. According to those attachments, inmates on extended lockdown are in fact prohibited from keeping legal materials in their cells; however, they are given access to their materials Monday through Friday for six hours per day.[2]

Plaintiff's claim is essentially an "access to courts" claim. Although there appears to be a dearth of jurisprudence in this Circuit dealing with the precise type of restriction plaintiff challenges, the Court can find guidance in the substantial body of jurisprudence concerning the analogous situation where inmates have restricted access to law libraries. Although denying inmates in lockdown *any* access to a law library is indeed problematic, the United States Fifth Circuit Court of Appeals has noted such access rights generally "may be narrowed without constitutional difficulty." Eason v. Thaler, 14 F.3d 8, 9 (5th Cir. 1994). The Court of Appeals has further made clear that the Constitution does not require unlimited access; rather, limitations are generally permissible so long as they are reasonably related to legitimate penological interests. McDonald v. Steward, 132 F.3d 225, 230 (5th Cir. 1998).

---

[2] Rec. Doc. 1, p. 69.

5

There are at least two justifications to support this challenged restriction on inmates in extended lockdown. First, as was explained to plaintiff in a memorandum from Major Larry Grow, which plaintiff has attached to his complaint, inmates in extended lockdown, such as himself, "have demonstrated a need for close supervision and to protect the institution, staff, and other inmates from your actions."[3] Second, a legitimate penological interest is served when restrictions are imposed on inmates who, due to their failure to comply with prison rules, have been placed on extended lockdown. The United States Fifth Circuit Court of Appeals has noted: "To promote the important government interest in maintaining discipline, officials must have available sanctions that impose incremental disadvantages on those already imprisoned." Daigre v. Maggio, 719 F.2d 1310, 1313 (5th Cir. 1984). Therefore, prison officials are afforded latitude to impose restrictions and deprivations, even punitive ones, on prisoners who "have demonstrated their defiance of prison rules." Id. at 1312. Indeed, "deprivations beyond those imposed on the general prison population is the very essence of internal prison discipline." Id.

As noted, the prison rule here limits inmates in extended lockdown to thirty hours of access per week to their legal materials. This Court has no hesitation in concluding that such a period is perfectly reasonable, if not generous, for inmates in extended lockdown. As noted in one of the attachments to plaintiff's complaint, such inmates arguably have even *more* time available to them for their legal work than inmates in the general population who have prison jobs.[4] Further, the prohibition against allowing such inmates to store such materials in their cell is a reasonable one,

---

[3] Rec. Doc. 1, p. 49.

[4] Rec. Doc. 1, p. 69.

in that, as is evident from the facts of this very case, inmates, including plaintiff himself, have been known to hide contraband within the materials. Such measures to ensure compliance with prison rules is not unreasonable when imposed on inmates who have demonstrated their unwillingness to obey such rules.

Limitations on Paper

Plaintiff also claims that inmates are given insufficient amounts of paper to pursue their litigation efforts. He notes that inmates are given only twenty-four sheets of paper per month[5] and opines that they should be given "at least 100 pages per month."[6]

It is indisputable that inmates must be provided with "sufficient" paper and writing materials to draft legal documents. Bounds v. Smith, 430 U.S. 817, 824 (1977). "However, this does not mean that inmates are entitled to receive an unlimited supply of such paper and writing implements." Armenta v. Rupert, Civil Action No. 5:05cv44, 2006 WL 2370605, at *10 (E.D. Tex. Aug. 14, 2006). Moreover, nowhere in the Constitution does it require that particularly litigious inmates be given excessive amounts of paper to pursue their lawsuits, and federal courts have been loath to establish specific minimums which must be provided. See, e.g., Sand v. Lewis, 886 F.2d 1166, 1169 (9th Cir. 1989).

In the abstract, twenty-four sheets of paper per month would appear to be more than adequate. Nevertheless, the Court need not make such a determination in this case. Despite the fact that he disingenuously fails to so note in the body of his complaint, the attachments to plaintiff's

---

[5] Rec. Doc. 1, p. 30.

[6] Rec. Doc. 1, p. 14.

complaint clearly show that additional paper is made available to inmates when they have a justifiable need for it, such as when it is necessary to meet a court deadline.[7]

Moreover, this claim is yet another species of an "access to courts" claim. Claims alleging violations of the right of access to courts are not cognizable unless the prisoner's position as a litigant has prejudiced by the denial. See, e.g., Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999); Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998); McDonald v. Steward, 132 F.3d 225, 230-31 (5th Cir. 1998); Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993). Plaintiff makes no allegation that he has suffered any prejudice in any of his litigation due to insufficient amounts of paper.

Further, the record in this case alone belies any contention that plaintiff has inadequate access to paper. In the mere one month this case has been pending, plaintiff has had enough paper to file a voluminous complaint with extensive supporting memoranda, a motion for appointment of counsel, a motion to stay, a supplemental affidavit, a motion for a temporary restraining order, a separate notice to the Court, a motion for production of documents, a letter to the Court, and a "Motion to Notify the Court and Request of Information."[8]

### Due Process Claim

Plaintiff next claims that he was found guilty of disciplinary charges in August 2006 without being allowed to attend the disciplinary hearing. That claim, which is essentially a due process claim, likewise has no merit.

---

[7] Rec. Doc. 1, p. 69; see also Rec. Doc.1, p. 76.

[8] Rec. Docs. 1, 4, 5, 7, 8, 9, 10, 11, and 12.

8

>The United States Supreme Court has held:
>
>[W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 483-84 (1995) (citations omitted). The United States Fifth Circuit Court of Appeals has held: "In the wake of Sandin, ... 'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir. 1996) (quoting Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995)). The Fifth Circuit has further noted that after Sandin "it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the *duration* of confinement, will henceforth qualify for constitutional 'liberty' status" entitled to procedural due process protections. Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995) (emphasis added). Stated differently, the Fifth Circuit has observed that the liberty interests protected by the Due Process Clause are "generally limited to state created regulations or statutes which affect the *quantity of time* rather than the *quality of time* served by a prisoner." Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) (emphasis added).

In the instant case, plaintiff was sentenced only to forty days in isolation.[9] That punishment affected only the quality, not the quantity, of the time he must serve and was not an atypical and

---

[9] Rec. Doc. 1, p. 55.

9

significant hardship in relation to the ordinary incidents of prison life. Accordingly, Sandin bars plaintiff's due process claim.

## Confiscation and Destruction of Personal Property

Plaintiff claims that his personal property was confiscated during shakedowns as contraband and destroyed. A prison guard's intentional destruction of an inmate's personal property during a shakedown is not actionable in federal court if the state law provides the inmate with an adequate postdeprivation remedy. Hudson v. Palmer, 468 U.S. 517, 536 (1984). Louisiana law clearly provides plaintiff with an adequate postdeprivation remedy, i.e. a tort suit brought in state court. Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984); Bennett v. Louisiana Department of Public Safety and Corrections, 61 Fed. App'x 919 (5th Cir. 2003); Arnold v. Inmate Accounts, 48 Fed. App'x 105 (5th Cir. 2002). Accordingly, plaintiff may not pursue such a claim in this federal forum. If he wishes to assert a claim for his property, he may do so only in the state courts.

## Shakedown by Primes

Plaintiff claims that, in retaliation for his filing grievances, a shakedown was initiated by defendant Primes on October 10, 2006. The law is clear: inmates have *no* reasonable expectation of privacy in their cells, and random searches without *any* reasonable suspicion of wrongdoing are not only constitutionally permissible but are in fact "essential to the effective security of penal institutions." Hudson, 468 U.S. at 525-30. Of course, that does not mean that a prisoner "is without a remedy for calculated harassment unrelated to prison needs." Id. at 530. Nevertheless, allowing a prisoner to convert a challenge to a prison shakedown into an actionable constitutional claim simply by adding a barebones allegation that the guard had a retaliatory motive is just is too facile

10

a tactic to be allowed to succeed. Rather, prisoners must allege an adequate factual basis for such a claim; conclusory allegations of retaliatory motive, such as the one advanced by plaintiff, are not sufficient. See Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988) (dismissing as frivolous a prisoner's conclusory allegations that a prison official's action was taken in retaliation for the prisoner's prior complaints).

To the extent that plaintiff is claiming that, pursuant to the shakedown, he was falsely accused of hiding a cigarette and lighter in his legal materials, that claim also fails. The United States Fifth Circuit Court of Appeals has held that a prisoner's claim that he was he was falsely accused and convicted of a disciplinary infraction "is indistinguishable from a malicious prosecution claim." Ordaz v. Martin, No. 93-4170 (5th Cir. Sept. 15, 1993) (unpublished). However, in 2003, the Fifth Circuit reexamined the body of law regarding malicious prosecution claims in federal civil rights actions and held that there is no "freestanding constitutional right to be free from malicious prosecution." Castellano v. Fragozo, 352 F.3d 939, 945 (5th Cir. 2003). Therefore, a prisoner's claim that disciplinary proceedings were wrongly initiated against him fails to state a claim upon which relief may be granted. Figgs v. Vrazel, 106 Fed. App'x 260, 261 (5th Cir. 2004).[10]

---

[10] Moreover, even under prior law, plaintiff's claim would fail because he could not meet the "favorable termination" requirement to pursue such a claim. In Ordaz, the Fifth Circuit noted:

> Even assuming that there is a federally protected right to be free from malicious prosecutions (including false disciplinary charges in the confines of a state prison), however, we have held that "a plaintiff may not state a claim under § 1983 for malicious prosecution absent proof that the prosecution terminated in his favor." [Brummett v. Camble, 946 F.2d 1178, 1180 (5th Cir. 1991).] Our reasoning in this regard is straightforward:
>
> Absent a ... requirement of "favorable termination" for the constitutional

11

### Searches Without Inmates Present

Plaintiff makes repeated references in his complaint to the fact that searches and shakedowns are performed without the inmates present. To the extent that he is claiming that such actions violate the Constitution, he is clearly wrong. An inmate has no constitutional right to be present during such searches. Block v. Rutherford, 468 U.S. 576, 589-91 (1984); Bell v. Wolfish, 441 U.S. 520, 555-57 (1979).

### Threats

Plaintiff also states in his complaint that he has been threatened and verbally harassed. However, although the harassment and threatening of inmates by prison guards is always troubling, such actions do not give rise to a claim cognizable pursuant to 42 U.S.C. § 1983. See Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002) ("[C]laims of verbal abuse are not actionable under §

---

> tort of malicious prosecution, a plaintiff could state a § 1983 claim even in cases in which he was ultimately convicted. In such cases, the federal courts would be forced to permit defendants to relitigate the merits of their criminal prosecutions via § 1983 despite the state court conviction. Such a rule, which poses the prospect of harassment, waste, and endless litigation, conflicts with the most basic principles of federalism.

Id. at 1183.
  The concerns highlighted in Brummett apply equally, if not with more force, in the context of § 1983 claims predicated on the filing of false disciplinary charges in state prisons. Without an allegation "that the [disciplinary proceeding] terminated in his favor," [the prisoner] simply has not made an arguable showing that any federally protected right has been violated. Absent such an allegation, his false disciplinary claim is legally frivolous under our precedent.

Ordaz, No. 93-4170; see also Reed v. Quarterman, No. 96-40949 (5th Cir. Oct. 20, 1997); Reed v. Griggs, No. 94-40587 (5th Cir. Dec. 13, 1994). In the instant case, plaintiff would be unable to meet the "favorable termination" requirement, in that he *pled guilty* to the charge in his prison disciplinary proceedings. Rec. Doc. 1, p. 56.

12

1983 ...."); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) ("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983."); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983."); see also Westbrook v. Treon, 78 Fed App'x 970, 972 (5th Cir. 2003) ("Verbal threats do not rise to the level of a constitutional violation.").

Moreover, 42 U.S.C. § 1997e(e) provides: "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Because the verbal abuse and threats resulted in no physical injury, plaintiff's claim is barred on that basis as well. See Calhoun, 312 F.3d at 734.

## Failure to Resolve Grievances

Finally, plaintiff claims that he complained to defendant Travis of the "oppressive restrictions" placed on inmates in extended lockdown; however, Travis has refused to investigate and resolve plaintiff's complaints.

Even if the Court assumes that Travis should have investigated and resolved plaintiff's complaints, the mere failure to do so is insufficient to serve as a basis for liability. In Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005), a prisoner alleged that prison officials failed to properly investigate his grievances and letters complaining about perceived rights violations. The United States Fifth Circuit Court of Appeals held that the claim was frivolous because a prisoner has no federally protected liberty interest in having his grievances investigated and resolved to his

13

satisfaction. Id. at 373-74; see also Propes v. Mays, 169 Fed App'x 183, 184-85 (5th Cir. 2006). Geiger is controlling precedent and bars plaintiff's recovery on this claim.

### Motion for a Temporary Restraining Order and Injunctive Relief

The Court notes that, in connection with this lawsuit, plaintiff has also filed a motion for a temporary restraining order and immediate injunctive relief.[11]  Because the relief he seeks would extend beyond the ten-day limit of a temporary restraining order, his motion must be construed solely as one for a preliminary injunction. Neal v. Federal Bureau of Prisons, 76 Fed. App'x 543, 545 (5th Cir. 2003).

Under the law of this Circuit, plaintiff must make a clear showing that his case satisfies the following four criteria before he can receive a preliminary injunction: (1) a substantial likelihood exists that plaintiff will succeed on the merits of his claim; (2) a substantial threat of irreparable harm exists if the injunction is not granted; (3) the threatened injury outweighs any harm to the defendants if the injunction is granted; and (4) the injunction will not undermine the public interest. See Valley v. Rapides Parish School Board, 118 F.3d 1047, 1051 (5th Cir. 1997); see also Ingebresten v. Jackson Public School District, 88 F.3d 274, 278 (5th Cir. 1996); Doe v. Duncanville Independent School Dist., 994 F.2d 160, 163 (5th Cir. 1993); Holland American Ins. Co. v. Succession of Roy, 777 F.2d 992, 997 (5th Cir. 1985).  The movant must satisfy all four factors; a failure to satisfy even one of the four factors requires a denial of the preliminary injunction. See Mississippi Power & Light v. United Gas Pipe Line Co., 760 F.2d 618, 621 (5th Cir. 1985).

---

[11]  Rec. Doc. 8.

For the reasons set forth in this opinion, there is no likelihood that plaintiff will succeed on the merits of his claims in this lawsuit. Accordingly, plaintiff's motion should be denied.[12]

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's federal civil rights claims against the defendants in their official capacities be **DISMISSED WITHOUT PREJUDICE** as barred by the Eleventh Amendment.

It is **FURTHER RECOMMENDED** that plaintiff's federal civil rights claims against the defendants in their individual capacities be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) as frivolous and for otherwise failing to state a claim on which relief may be granted.

It is **FURTHER RECOMMENDED** that plaintiff's "Motion to Request a T.R.O. and Injunctive Relief," Rec. Doc. 8, be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being

---

[12] Additionally, the Court notes that plaintiff's motion is problematic in other respects. First, plaintiff requests that the Court issue a restraining order against Lt. Wade Rigdon; however, Rigdon is not a party to this action. See Fed.R.Civ.P. 65(d). Second, plaintiff requests that the Court order that he be transferred to another facility. The Court has no authority to issue such an order. Placement of state prisoners is a matter left to the discretion of state officials. A prisoner has no constitutional right springing from the Constitution itself or from any protected liberty or property interest arising from state law to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another. Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995); Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989); Maddox v. Thomas, 671 F.2d 949, 950 (5th Cir. 1982).

served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-second day of March, 2007.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**